May it please the Court, I'd like to reserve three minutes for rebuttal. We're here today for the second time because the District Court didn't do what you told it to the first time. You remanded this case, reversed and remanded this case to the District Court. You directed the District Court in the earlier case to follow Harlech, and the District Court complied with that to the extent that it entered a summary judgment in favor of the plaintiffs in this case, the F family, on the basis that Blue Shield improperly denied coverage at a residential treatment center. But the District Court denied the second holding of Harlech, and that's an important fact. It's an important fact. Roberts. Mr. King, can you tell us exactly what it is you want us to do? At the end of your brief, it says reverse the District Court's class certification decision. But much of your brief is talking about factors and classes that were proposed and evidence that weren't part of the papers before the District Court when it denied class certification. So are you really contending that the District Court erred at step one when it denied class certification, or are you really saying what you really want is us to say this wasn't a motion for reconsideration and it should be sent back to the District Court for some sort of a determination about whether to allow you to file a renewed motion for class certification at which you want us to direct the District Court to consider your new proposed class and the 30B6 transcripts? I think the best and easiest way to reach a decision that makes the most sense and does the most justice in this case, Judge Lightman, is for this Court to reverse and to certify the class as this Court did in Leyva, which is to say you can — we've had some intervening case law since the District Court's ruling that I think is important, and this Court knows that. But this Court reviews class certification decisions for an abuse of discretion. There's been no exercise of discretion by the District Court with respect to the specific class that you want us to certify because the Court refused to consider that. So how would it make sense for our result in this case to be to certify the class that you want certified because this Court in the first instance isn't in the business of making an original certification decision? Here's why. Because you've got the same arguments in front of you that we presented to the District Court. The record is the same. The arguments are the same. You're in a position to make that evaluation. If you feel that there are facts that need to be fleshed out, I think that a remand and direction to the District Court to consider the renewed motion to certify — of course, we argue, as you know, that the District Court erred in treating that as a — not as something other than a motion to certify, which it should have treated it as. Reconsideration is not the proper vehicle for analyzing that second motion to certify that we made. But you've got the information in front of you right now that will allow you to comfortably certify the class. The Ninth Circuit's done that before. Leyva's a good example of it. We think that especially because this is the second go-around, that it would be more appropriate for clear direction from this Court to the District Court. And so for that reason, we think that Leyva's a good model for this Court to follow. And that's the problem— Counsel, why don't you go ahead and turn to the mootness question? I think we need to address that. It feels like the elephant in the room. I'm sorry, Your Honor? The mootness question? Yes. I'm sorry. Thank you. We did get word from the clerk of the Court that that was something that this Court was concerned about. Campion is that case. It's a settled issue. What we had at issue in Campion, rather, is a settlement agreement. We don't have a settlement agreement in this case. We don't have even an offer of judgment that was accepted. Is there anything more that your client, that Daniel F., can get out of this case? Oh, yes. Absolutely. What else is Daniel F. looking for? Well, one of the things that has been referred to in other cases is the incentive payments that are available through—for successful claimants, for successful class action claimants when they are successful in having the class certified. That's something that F. family is interested in. But as this Court noted in Pitts v. Terrible Herbs, you have two separate and distinct matters, ways in which class claimants can pursue class actions. One is on their own behalf. As you've pointed out, Judge Bivey, that's an excellent reason for individuals to pursue class oftentimes, is they're first and foremost concerned about their own self-interest. But secondly, and important as a separate and distinct recognized angle for a way in which a class claimant can pursue a class action and have standing to do so, is in their capacity as a class representative. And the Court has noticed that. Again, the Pitts case noticed that. And it, of course, was relying on Supreme Court case law. Roper, Garrity v.—U.S. Parole Commission v. Garrity, those cases. So it's a very well-established and consistent principle that you can have individuals whose claims have been even offered to be satisfied, as Blue Shield has done in this case, through both the offer of judgment and entry of judgment in favor of the claimants, and have them continue to be able to maintain standing to pursue their status as a class action claimant and the status as a class action for the entire case. And that's true here. The Chen v. Allstate case that we referred to in our supplemental letter that we sent earlier this week as a class action said that a class action becomes moot when a plaintiff actually receives complete relief on that claim, not merely when that relief is offered or tendered. So— Roberts. Right. But that's — and that's Pitts, where we had an offer of settlement. You've got full — you've got everything that you asked for. You've got— I'm sorry, Your Honor, not collected a dime. There's not been a cent paid by Blue Shield. There's a judgment that's been entered. It's never been collected. It's never been paid. Is there an impediment to you collecting it? Have you tried to execute it on the judgment? No. Isn't that the usual way you collect? Sure. We don't want to. Well, you don't want to collect. We're in a position where we want to pursue this claim as a class action. You have a judgment, but you don't want to collect it. We don't want it right now. And the reason for that is my clients understand— If the plaintiff gets a judgment for full relief of whatever monetary claims the plaintiff has, by refusing to execute it on that judgment, that prevents mootness? Well, we don't have to deal with that because we do have these other— Why not? Because we're not — even if we executed it on the judgment, it wouldn't be paid the money that the F family is entitled to be paid as a successful claimant representing an entire class. And that's been recognized by itself as a basis. If that's — if that's correct, doesn't that suggest that our prior cases are wrong? No, not at all. Because weren't these other also class actions? No. And weren't there always incentive payments? Did we deal with the question of incentive payments? Yes. And this Court — that's true, Your Honor. And this Court has recognized that those incentive payments in and of themselves may form the basis for standing. I'm looking — I'm thinking of — I believe it's Nehru's that talks about that. Yes. Enhancement fees are discussed in the Nehru's case. I'm sorry. I don't know that this is cited. You asked for citations of supplemental material. This is the Nehru's v. Charter Communications case. The cite is 591F3-1261. Why doesn't that make our opinion — why doesn't your argument make our opinion in Campion wrong? Well, because Campion dealt with — it was a narrow fact circumstance. It dealt with a settlement agreement at that point. Well, yes, but they reserved — they reserved their rights. They reserved their rights to appeal the Court's order denying class certification. Yes. Why doesn't the same question about incentive payments come to bear in that case? I don't know why the Ninth Circuit didn't reach that issue. I know that you don't, but I have to deal with this problem, counsel. I understand. I've got to be able to explain this to my colleagues if I decide to disagree with them. The critical point is that Campion does not disallow or doesn't rule out the idea that this incentive payment idea that's referred to in Nehru's, without anything else, creates standing to go on and creates a case in controversy under Article 3 that keeps this case alive. So I think that that's — for whatever reason, Campion doesn't cite it, but the Nehru's case does. So I think that it's important to note that just because — if we had a situation where just because a tender is made and the tender isn't accepted, that was sufficient to knock out the claim — the class claimants, then you'd have the abuse of the class action mechanism by individuals who wanted to pick off the class claimants on a serial basis, which we have been warned and cautioned against. The thing that's important is that Harlech, on that second aspect of Harlech, which said you can't raise new defenses, this isn't just a case that might be a good idea to apply or maybe it's analogous. This is not this case specifically, but it really pretty much is this case. Here's why. A couple points on Harlech. Didn't the Court say in — when it said the general rule that it was concerned about insurance companies holding back when they had the information? Yes. Is there any indication that that's what happened here? Well, what we've got here is a situation where they did know that these claims were being presented, these residential treatment claims. And in Harlech, Your Honor, what we had is Blue Shield coming to the Court and saying, well, we want to talk about medical necessity. The same exact argument that's being made in this case by Blue Shield and that the lower court in this case accepted as a basis to create lack of commonality was rejected in Harlech. Another argument here that Blue Shield is saying, as I understand it, not only do we want to discuss medical necessity, but we want to look at each particular bill to see if a particular claimed cost is available. And Harlech, there's a district court decision in this circuit called Martinez that draws a distinction in how Harlech applies. It says even if Harlech says an insurer can't raise a new claim as — raise a new basis for denying a claim flat out, that doesn't mean that the insurer, after allowing a claim writ large, that doesn't mean that an insurer forfeits the right to look at the particular charges. So — We acknowledge, Your Honor, Judge Lightman. We acknowledge that co-pays, deductible coinsurance, they can apply those things. And there's going to be a determination on a claim-by-claim basis about exactly how much is owed based on those things. But when you've got — More than that. I mean, they're talking about whether the particular day was for the covered treatment, whether the person was at home, those sorts of things. Why isn't it — That's not applicable. That's not allowable under Harlech. And this is why. Harlech dealt with the same insurer, Blue Shield, the same type of treatment, residential treatment, the same reason for denial. It's categorical exclusion for residential treatment. And they tried to do exactly what they're talking about doing here, and the Court struck them down in Harlech. Why? Because they said these things were known, or the Spindex case, this circuit from 770F3-1282, expanded a little bit on Harlech and said, if you have an insurer who has a known or a reasonably knowable reason for denial, they are precluded from raising it for the first time in litigation. And that's what we've got here. Now, that's not to say that there aren't some noncommon issues. There are. And where you draw the line as to when Blue Shield should be able to raise issues that weren't raised before and when they weren't, I think that's a challenging question, quite honestly. We'd acknowledge, for example, on copays, coinsurance and deductible, they can raise that on the Court below. But when you're talking about medical necessity, Harlech is very clear in saying they can't raise that. Why? Because it was either known or reasonably knowable at the time the claim was initially presented. Kennedy. Mr. King, I want to take you back to Nehru's. This is the way Campion characterizes the, I'll call it the Nehru's exception, which the Court says. There, the class representative retained a continued financial interest in the advancement of the class claims because he was to receive an enhancement fee of $20,000 were the Court to approve the settlement. Now, is there something in the record here that shows that Daniel F. retains some kind of interest and, you know, has promised enhancement of a certain sum for being the class representative? Not based on any agreement between the parties, Your Honor. There's nothing in the record? No. But it's a very common practice in class actions for incentive payments to be paid to class claimants. But what you're saying is that just because it's a common practice, it's often paid, that's sufficient to, to impute an interest to your client as, you know, as being entitled to an enhancement? I think certainly, Your Honor. That's a common practice. It's not outlined. I don't know how common it is. I know it occurs a number of times. Well, it's not outlined in Rule 23, but it's been identified. It was identified by Nehru's as being an independent reason for why there was a live case in controversy. Well, but in Nehru's, there seemed to be some record that there was, you know, it was already established that he would receive $20,000 for approval of the settlement. Well, that's true. That's true. I know, but there's no such record here, is there? That's correct, Your Honor. All right. The problem is that once you get on this slippery slope of saying the defendants have the ability to unilaterally dictate when they can stipulate and dictate that the plaintiff class rep is, quote, satisfied, unquote, for their individual claims, then you get into this whole slippery slope of capable of repetition yet evading review. And it basically guts Rule 23. I'll say the remainder. But we know we don't have that here, right, because Blue Cross is now no longer — if that in some other case might apply and give standing, isn't the record here clear that Blue Cross isn't any longer denying claims under the basis that — was it denied here? That's what they've said, Your Honor. And, in fact, after Harlech came down in 2012, because it was against Blue Shield, what you've got is — we believe that they did carry that practice on for some period of time based on our own independent review of facts. But I think it's true that they're not doing it today. May it please the Court. My name is Greg Pimstone representing Blue Shield of California. I'll start with the mootness issue, Your Honor, since the Court raised it recently. The Nehru's case is distinguishable, as I think Judge Tshima indicated, because in that case, as Campion held, in Nehru's there was actually a settlement or an agreement that specifically gave the Campion plaintiff a right to receive an incentive payment. There's no such agreement here. Any incentive fee would be purely discretionary. And I think the Court — Why does that matter? I mean, as I understand the plaintiff's position here, they intend to seek that fee. The question isn't whether they are guaranteed the fee. The question is do they have a financial interest in the case today. So the plaintiffs tell us that if this class is certified, we're going to get up in the batter's box and take our best swing. And so we still have real skin in the game. Why isn't that enough? Well, if that were the — it's because the potential interest or the possibility of getting an incentive fee is too contingent. It's not something that's guaranteed. And as I think the Court has indicated in the questioning earlier, if that were the touchstone, the possibility of getting an incentive fee, if that were sufficient, then all of these cases would have been decided differently. Campion would have been decided differently. The Court would not have struggled — this Court and the Supreme Court would not have struggled over the last number of years to identify those specific factors that would cause the personal stake requirement to be relaxed in certain situations, such as transitory claims, such as involuntary situations. The courts have struggled specifically to identify those particular situations where the personal stake requirement can be relaxed. And they are confined to very specific instances, and a whole jurisprudence has evolved around that, specifically because the general rule is that if a plaintiff has extinguished his or her individual claims or financial stake in the litigation, there is no continuing — there is no continuing injury or stake sufficient. Well, let me ask this question. Would it be a fair reading of Campion to say, well, in that case, you know, the possibility of an incentive payment to the class representative was just overlooked. It was never addressed. So because it was overlooked there, do we have to overlook it here? Well, it certainly wasn't — it was not overlooked in Campion, because the Court in Campion, as Your Honor recognized, took great pains to distinguish the Nehru's situation from the situation at Barr and Campion. The reality is, is that the Court would know it is a rule of law that a — But Campion says nothing about, you know, does it? I don't recall seeing anything about, you know, an incentive payment to the class representative. In Campion, the Court distinguished between the Nehru situation, which gave the plaintiff a concrete interest because it was a contractual right to receive an incentive fee, as compared to the situation in Campion where there was no such right. In Campion, the situation was as it is here. And in fact, Campion and this case are for legal purposes indistinguishable. What you have in Campion — So what do you think is the rule that comes out of Campion and Nehru? So if you're trying to thread that needle, what do you think the rule is in the Ninth Circuit now? If you specifically reserve the incentive payments, then that's what's required? If you fail to reserve them, then the matter is moot? In Campion, as here, the Court specifically said the plaintiff had specifically reserved in the settlement agreements the right to present, to appeal class — denial of class certification and to maintain a class certification. And the Court in Campion, this Court said that that was irrelevant. So the rule that can be divined from Campion is that if we are in just the normal situation that you would have in any class action, where there's the possibility, discretionary possibility down the road of an incentive fee, that is not enough. That is not enough of a financial stake to defeat mootness. If you have some other circumstance, if there is some kind of contractual guarantee, as you had in Nehru's, then that might, as the Court said in Campion, that would be sufficient to give a concrete interest. But this case is no different than any other case that has been before this Court and the Supreme Court. And if that were the rule, that a discretionary possibility of incentive fee were enough, then you wouldn't — then the courts would not have needed to develop doctrines like the relation-back doctrine or the transitory doctrine. Alito, it looks like both parties were aware of the potential for mootness in this case and that — and that both sides were trying to be careful to dance around that. And it appears that even Blue Shield was telling the district court that they didn't think the case was going to be moot. The mootness issue was something that probably should have been raised in our appellate papers. And it is something that — But it was raised before the district court. It was raised at a time when the district court still had before it the question of the attorney's fees. And if the attorney's fees matter were still open, this might be a very different question for us. Right. But once the district court decided all the attorney's fees and all of the other costs, it doesn't look like there's anything left to be decided. There is nothing left to be decided. And in that situation, this case is identical to Campion. In Campion, you had a voluntary settlement agreement. Here, you had the plaintiff, after summary judgment, voluntarily giving up the rest of the state. If the appellants had appealed the award of attorney's fees, would that be enough to keep the case alive? If we were here on a cross appeal, that would not render it moot? If the appellant had appealed the denial of attorney's fees or the reduction of attorney's fees or the cost issue, that conceivably, that would be a different case. I don't know whether that would be sufficient, but we don't have that here. What we have here — There would be at least an argument, wouldn't there? There would be at least an argument in that instance. What you have here is a voluntary decision by the plaintiffs, after bringing summary judgment, after receiving judgment, a voluntary decision to extinguish all remaining interests, individual interests, that Jeffrey's family had in this case. And that's why we're in Campion. This is not a situation where Blue Shield is attempting to pick off a named plaintiff. This is not a situation where you have claims that inherently are transitory in nature. This is not a situation where you have an involuntary judgment being entered over a plaintiff's objection. None of the situations that have historically occurred in Chen, in Garrity, in all the other cases that have dealt with this, in Campion, in the Gomez case, the courts have struggled really hard to attempt to sort of relax, in a sense, the personal stake requirement where practicality requires it. And the courts have articulated maybe three different situations where they've been willing to do that. In a sense, it's a difficult issue for the court because it really is a relaxation, but there have been very — these situations have been very limited. And, in fact, in Campion, this Court limited the Garrity case and said the Garrity case applies only in situations where you have a truly involuntary extinguishment as compared to here, where the plaintiffs chose to give up any additional stake that they had in this case. Can you be more specific? When you say chose to give up, what do you mean? They didn't appeal claiming that the damage award was too low and they didn't appeal challenging attorney's fees? Is that what you mean by voluntarily gave up? Yeah. Yeah. The summary judgment proceedings, they got all of the, quote, damages. It's an Arista case. It's not really damage. But they got all of the bills, the medical expenses that they sought. But they did not get all the attorney's fees they sought. They didn't get the costs. There were issues that they lost at on summary judgment. And those were issues that, in concept, could have been a continuing individual stake in the continuation of this litigation. And none of those issues have been briefed on appeal as appellate issues. The only issues that have been appealed here are the class issues. So that was, in a sense, Your Honor, that was a voluntary choice that was made by the appellant here. And, unfortunately, we believe for the appellant, it took them out of the case. My time is limited, so let me get to the other issues beyond mootness, if the Court has no further questions. There are three issues that I want to raise beyond mootness. And that is the first individual issue, and I'm going now to predominance. It's both predominance, but it's also sort of manageability as well. The first issue is any particular putative plaintiff would need to show that he or she had a claim that was indeed governed by the Parity Act. The Parity Act, as the Court knows, applies to ten individual medical conditions. It does not apply to any condition at all. It doesn't even apply to all mental health conditions. And a class member must show, in order for Blue Shield's exclusion to be deemed invalid, the class member must show that he or she was treated for a Parity Act condition. Even the plaintiffs don't contend in their brief. The appellants don't contend in their brief that that is an issue that was waived because that's an element of the claim that each individual class member would need to show. So if we were not in a class action situation, any particular claimant coming to Blue Shield to say under Harlech I'm entitled to have my residential care paid, they would need to show that, in fact, they were treated for a Parity Act condition. These are significant issues. A person may believe that they had a Parity Act condition. A person may say, you know what, I had bulimia, and I believe I was treated for bulimia. But the medical records may ultimately show the plaintiff or that that particular person went in for treatment for another eating disorder that was not bulimia or that they did not meet the criteria. Sometimes people have multiple conditions. A person may have, for example, panic disorder, which is a Parity Act condition, but they may also have substance abuse. They may say I believe that Harlech applies and that the exclusion is invalid because I was treated for panic disorder. But if one were to look at the medical records and have the experts examine the medical records, you may see that, in fact, they were treated for substance abuse and not panic disorder, and so the exclusion would be a valid exclusion because Blue Shield would not be required to pay residential care for someone being treated for substance abuse. Kennedy. Well, what are you addressing? Are you addressing the predominance issue? I'm addressing the predominance issue because one major fact that every class member and the appellants have not indicated that this is a waived issue because it's an element of their claim, is that an individual would be taken care of by a proper definition of the class? No, because if the class were defined to — even if the class were defined, and this class is not so defined, but even if the class were defined to say all individuals who were treated for a Parity Act condition, an individual may claim in perfectly honestly believing that he or she had been treated for a Parity Act condition. Let's say my example of the person who had a panic disorder and substance abuse might say, you know, I went in for six months' worth of treatment, but the medical records may ultimately show Blue Shield would be entitled to examine the medical records in the context of a litigation and prove that, in fact, the person did not receive treatment for the Parity Act condition, but instead went in for substance abuse, which is not a Parity Act condition. These are facts that are individual facts relating to any particular class member, and there is no common proof that would indicate whether any particular person at any particular time was treated for a Parity Act condition. Another individual issue that the appellants do not contend was waived, and I'll get to the waiver issue in just a second, is, for example, whether their claim is governed by ERISA, whether the plan that they were involved in is an ERISA-governed plan. And this Court has, on several occasions, in the Zavora case, for example, in the Stewart case, has indicated that whether an ERISA — whether a plan is an ERISA plan is a question of fact, and there have been entire litigations over whether the particular conditions that are needed to establish an ERISA plan were present. For example, did the employer make contributions into the plan? Was participation in the plan voluntary? There have been entire cases about whether that occurred. And remember, this is not a case where — this is not a class action where you're dealing with one plan and multiple beneficiaries. This is a case where you're dealing with multiple plans, and the question that any individual would want to know is that their particular plan was a plan that, in fact, met ERISA's factual requirements. And this is not something that individuals necessarily would know themselves. The — Kennedy. Oh, but that certainly can be taken care of by class definition, can't it? You can limit the class to, you know, people in ERISA plans. Goldstein. But the problem is that an individual may not know whether they were in an ERISA plan because whether someone had an ERISA plan is a question of fact. Someone may say, I was in an employer plan, but they may not know whether the various conditions for ERISA were satisfied. Well, let me ask you this. You think Blue Shield would know that? The evidence in the case was that Blue Shield would not know that. There is no evidence in the record that Blue Shield knows which plan is an ERISA plan because Blue Shield sells plans. Blue Shield sells health coverage. Whether an ERISA plan is created depends on what the employer then does with that. Does the employer contribute? Is it voluntary? So there is no evidence. The evidence that the plaintiffs cited, the appellants cited down below, was they said, well, Blue Shield applied Harlech, so therefore it must know whether a plan was an ERISA plan. Well, the evidence was that Blue Shield applied Harlech to any plan that conceivably could be an ERISA plan, because precisely because it doesn't know specifically. But if there were litigation, individual litigation by a class member, Blue Shield would be entitled to take a look to see did the claim, did the plan in fact, was it an ERISA plan such that they would be covered by this particular class definition. I do want to get to Harlech and the medical necessity issue because that's a really important issue. And it's important because the appellants have misconstrued Harlech in a way that is very dangerous and would have tremendous implications for the industry. And that is under Harlech, Harlech was a case where if you look through Harlech, Harlech was a case where the Court saw that Blue Shield in that specific case, and it was not a class action, Harlech, in that specific case, Blue Shield had the medical records. And in fact, there was, Harlech discusses the fact that two Blue Shield medical directors had in fact raised the issue of potential medical necessity. The medical necessity had been raised in an early communication to Harlech, but then ultimately was not cited when Blue Shield was not covered. Do you expressly say in the opinion that Blue Shield had the medical records, or are you implying that because there's a statement in there that somebody raised medical necessity, Blue Shield must have had the medical records? That's a very good question. I've read Harlech about a hundred times. Harlech discusses the fact that Blue Shield medical directors had raised medical necessity as an issue, and then ultimately medical necessity was not asserted in that case. I read the case for the exact same reason, to say is Harlech a case that turns on Blue Shield in fact having the medical records, and the Court just didn't expressly say one way or the other, right? It did not expressly say. But if you read, as you have, Your Honor, if you read Harlech carefully, Harlech is all about determinations that or issues that were raised, medical necessity being raised initially, but then never asserted ultimately. And Harlech, and this is critical, Harlech quotes the standard. And what Harlech says is that where plan, and I'm quoting now, where plan administrators have available sufficient information to assert a basis for denial of benefits but choose to hold that basis in reserve, that is where waiver can apply. Harlech cites to the Mitchell case, which in turn cites to a First Circuit case in Glista, and that's the genesis of this language. And in Glista, Glista was a case where they had the medical records, where two doctors, this is Unum, where two Unum doctors looked at the medical records, discussed whether the treatment exclusion versus the symptoms exclusion should apply, ultimately only asserted one of those bases and withheld the other. That was the Glista case where the plan had reviewed, the insurer in that case had reviewed the medical records in their possession. And this is the critical point, is that because this took place, in our case, in the context of a coverage exclusion, it would be an individual question of fact in every case, number one, as to whether Blue Shield even asserted a medical necessity denial, that would be an individual issue for each putative class member. But more importantly, it would be an individualized question as to whether Blue Shield even had the medical records at all. Because if Blue Shield didn't have the medical records, it would have no basis. It would have no basis for asserting a medical necessity exclusion under Harlech, which specifically says that you waive it only where you have available sufficient information, but choose not to assert it. So the point of this case is that it's a case where a Federal court has declined to find waiver on the ground that exactly you're saying, that the insurer didn't have the records. In other words, applying the rule that you say is the rule? Maybe. I can't think of it right now, Your Honor, but it may well be the case. One last point, because my time is up, and that is it would not be a workable rule in the industry to say to health plans that in situations where you have a coverage exclusion, we don't cover acupuncture, okay, that in situations where there's a coverage exclusion, that a plan in every instance then, instead of just asserting that denial, that exclusion, needs to say, stop, I'm going to go out, I'm going to go to the providers, I'm going to at their expense or my expense get the medical records, I'm going to wait for them to copy them, I'm going to bring it back, I'm now going to hire a medical director to review those medical records, determine whether the service which is excluded is nevertheless also not a medical necessity in addition to coverage exclusion. It wouldn't work. It would burden providers. It would take a tremendous amount of time then in order for plans to be able to respond to members instead of giving them a quick answer that your service isn't covered. And it wouldn't work for one last reason, and that reason is that in California as well, when a medical necessity determination is made, that kicks into play certain requirements under State law, which would be saved from preemption here. And those requirements are that when a medical necessity determination is made, an individual, a beneficiary has the right to seek independent medical review from the State. But they only have that right for six months after the determination, otherwise they lose it. And then once the State provides independent medical review, if they rule in the claimant's favor, then the plan has to pay that amount within five days. So the problem with asserting medical necessity when, in fact, medical necessity is really not a primary basis because it's an excluded coverage, is that it puts into play not only does it create burden issues for providers and time issues, but it puts into play a whole sort of variety of laws that govern medical necessity that wouldn't make sense if you're asserting coverage exclusion. Thank you, Your Honor. Roberts.  Mr. King. Thank you, Your Honor. If I could have the amount of time that my compatriot had total, I'd appreciate that. I want to start with where Blue Shield ended off, though. Whether they get the medical records is purely up to them. They are the ones who, when they receive a claim, make an initial decision about it. But, look, isn't he right that it would be almost nonsensical to say if they get a claim that on its face is not covered, they are obligated to do, run down every rabbit hole? This is exactly the issue that this Court decided in Harlech. And they want to relitigate Harlech. And the fact is this. ERISA itself, not the regulations, the language of the statute requires Blue Shield to provide to us, my client, the reasons for denial. Now, we talked earlier in my opening about where that line is drawn. And I would say that it's not necessary for them to present it as a reason for denial in their opening denial. There are co-pays and deductibles that apply. But certainly medical necessity is, in fact, under the express holding of Harlech something that they're obligated to raise. And the reason for that is they know when the claim is presented whether that's an issue in their own mind, and they have to make a choice. Do we want to order more medical records? You raise a great point, Judge Lightman, that doesn't this put a big burden on the insurance companies? Yes, it does. The alternative, though, the alternative is to put on the burden on the claimants to be subjected to multiple series of denials. And that's where ERISA comes in and the language of ERISA and the intent of Congress. And Harlech was very clear on this, saying the intent of Congress is to put in place a pre-litigation appeal process to benefit the Federal judiciary primarily so that you're not swamped with cases that deal with garden variety insurance claims, basically. And we have insurance companies dealing with something in an expeditious, efficient manner. And that's what we're hoping for here, and that's what we want. And Harlech recognized if you don't require these insurers to live up to the explicit language of the statute that requires them to present the reasons, plural, for denial, when they initially deny the claim, you're asking for trouble. You're asking for abuse of claimants, and you're asking for a lot more work for the Federal judiciary. Yes, it's a burden and it's an important thing for them to comply with. They should be required to do it. I want to go back. You know, there are some disparate issues, obviously. We're not claiming that there aren't. But we don't think that they predominate over the issues that are common to the class. Harlech does not create disparate issues. Harlech creates common issues. And if anything, Harlech moves us in the direction of making it easier for the district court and this Court to certify a class. I want to go back to the Campion case. One of the things you asked, Judge Biby, well, look, we've got to reconcile Campion. You can't just leave me here saying that Campion says what it says. Here's the way I would reconcile Campion and Nehru's and the Evan case. They're all dealing with settlement agreements. They're all dealing with efforts made by the parties to resolve the disputes between them. And the problem that you have in Campion is Campion, for whatever reason, maybe they just didn't think of it, the claimant never sought to reserve, never stuck in that settlement agreement. There's something else that we want to achieve that we can achieve. You know, counsel, I'm somewhat sympathetic, but the argument that you're making seems to be Judge Owen's argument, which was a dissent in Campion. Well, all I can say, Your Honor, is that if you go down the road that says that — It's pretty clear, counsel, that you were trying to resolve all the issues here. You submitted your attorney's fees. You submitted your costs. The district court went through everything very, very carefully. I mean, they went through it in a great deal of detail. I mean, so you were not surprised that all of these issues were going to be resolved. And we were aware that there is something above and beyond all those things that the Daniel F. family has the ability to pursue. And Judge Lightman referred to those incentive payments. It's clear that you — that both sides were aware of the potential of mootness. But I'm not sure. But there's nothing in the record, Your Honor, that says we had the intent or the desire to settle the case in the same way that you had in Campion and in Nehru's. There's no settlement agreement. Yeah, but in Campion, they reserved their right to appeal the class action. No, I understand. I mean, very, very clear. They thought there was a piece of this that was still alive. And the district court — I mean, I'm sorry, the majority in Campion specifically addresses the question of incentive payments. Well, and they address it. That alone is not sufficient. And they address it by looking at the terms of the settlement agreement. There's no settlement agreement here. Because there wasn't any reservation here on that point. Well, we have never conceded that the only money that's owed the Daniel F. family or that they would receive if they get this claim reversed here is the money that was awarded by the district court. We can get, we should get more if you reverse. And we will. Thank you. Okay. Thank you, Mr. King. We thank both counsel for the argument. You were a very well-prepared gentleman. And the Court does appreciate it and acknowledges it. With that, we've completed the oral argument calendar, and the Court stands adjourned.
judges: Tashima, Bybee, Leitman